[No. 33038.   Department Two.   April 7, 1955.]

G. P. Boyle, *Appellant*, v. King County, *Respondent.*[1]

[1]Reported in 282 P. (2d) 261.

Geo. H. Rummens, Kenneth P. Short, Paul R. Cressman, and Richard M. Oswald, for appellant.

Charles O. Carroll and V. D. Bradeson, for respondent.

Rosellini, J.—Appellant operated a hog farm near Seattle, Washington. During the period involved in this suit, he fed his hogs exclusively upon garbage collected from Firland Sanatorium in Seattle under a contract granting him permission to remove all edible garbage which should accumulate there. The contract required the appellant to post a bond for faithful performance and was signed by the business manager of Firland Sanatorium on behalf of King County.

On May 14, 1952, appellant filed with respondent a claim for damages for the loss of one thousand eighty-eight pigs and seventy-nine sows, which he alleged had died during the preceding two months from the effects of sodium fluoroacetate, a poison commonly known as 1080, negligently placed or permitted to be placed in the garbage appellant obtained from Firland. After ninety days, the respondent having failed to act upon the claim, this action was brought, based upon the theories of negligence and breach of warranty. When all the evidence had been heard, the trial court dismissed the action, finding that the appellant had failed to sustain the burden of proving facts sufficient to entitle him to recover under either theory.

There were findings: that respondent's agent, the business manager at Firland, knew when the contract was entered into that the garbage was to be used for hog feed; that appellant fed no other feed to his hogs; that the garbage was selected by him, dumped into his truck, and carried directly to his farm, where it was immediately cooked and fed to the hogs; and that the hogs died from the effects of "some poison." The court refused to make a finding that they died from "1080" and stated in its findings that the only evidence to this effect was that some of the pigs on eating the garbage

"died of symptoms characteristic of 1080 poisoning, while other pigs eating simultaneously did not show such symptoms." It further refused to find that there was poison in the garbage at the time it left Firland. There was an affirmative finding that no "1080" was purchased or used by Firland Sanatorium in or about its premises. Appellant, the court found, had failed to sustain the burden of proving negligence on the part of the respondent.

Appellant contends that, upon the facts as found, an inference necessarily arises that the swill contained poison when he picked it up. The complaint alleged death by a specific poison, sodium fluoroacetate or 1080, and specific acts of negligence on the part of respondent in placing this particular poison or permitting it to be placed in the garbage.

We have held that, if the facts constituting negligence are specifically alleged, the pleader, in presenting evidence, should be limited to proof of such facts, otherwise there would be a variance to the prejudice of the opposite party. *Albin v. Seattle Electric Co.*, 40 Wash. 51, 82 Pac. 145 (1905), quoted in *Dick v. Great Northern R. Co.*, 12 Wn. (2d) 364, 121 P. (2d) 966 (1942). Respondent objected to the introduction of any evidence pertaining to its use of poisons other than 1080; although the court permitted its introduction, it disregarded such testimony in making its findings and conclusions. Appellant assigns no error in this regard.

The appellant, however, insists that, having made a finding that the hogs died of some poison, and a further finding that the hogs ate no other food than garbage from respondent's sanatorium, the court was bound to infer that there was poison in the garbage when it was collected by appellant, and that it was there through the respondent's negligence or breach of warranty. Even if we accept his apparent assumption that the limitations of the pleadings can be ignored, we cannot agree that these inferences are inescapable.

This is not a situation where the defendant had exclusive control of the agency causing the injury, and the

doctrine of *res ipsa loquitur*, which would give rise to an inference of negligence, does not apply. The identity of the poison was never established, and it cannot be known whether it was a substance which would not ordinarily be in the garbage without respondent's negligence.

The respondent and its agents were not experts on hog feeding, nor did they represent themselves to be. There was no evidence of any negligent act or omission on the part of Firland's employees; there was considerable testimony that they exercised care in segregating the garbage and keeping the garbage cans clean, supporting a finding that respondent had breached no duty owed to the appellant.

Appellant relies upon the case of *Nelson v. West Coast Dairy Co.*, 5 Wn. (2d) 284, 105 P. (2d) 76, 130 A. L. R. 606 (1940), to support his argument that, upon the facts found, an inference must necessarily arise that there was poison in the garbage at the time it was removed from the Sanatorium. The court there was asked to determine whether there was sufficient evidence to support the trial court's finding that milk supplied by the defendants was the proximate cause of the plaintiff's illness, undulent fever. The fact that the plaintiff had contracted undulent fever was conceded by the defendants; and the only question was whether it had been sufficiently established that the disease was caused from milk furnished by defendants—there being evidence that undulent fever may be acquired from sources other than milk. We held that, in order to sustain a trial court's finding as to the source of an injury, it is necessary only that the alleged cause be the "most probable cause," and it is not necessary to establish it beyond a reasonable doubt. In that case, we were concerned with the quantum of evidence necessary to *sustain* an inference drawn by the trier of the fact, not the quantum necessary to *require* an inference. In the *Nelson* case, the nature of the plaintiff's illness was undisputed, and it was further shown that the defendants had procured their milk from herds infected with Bangs disease, a known source of undulent fever.

Here, the most that the trial court was able to conclude from the evidence was that the appellant's hogs died

of "some" poison, and there was no proof that the respondent's garbage had been exposed to this unidentified poison. Appellant would have us infer, as a matter of law, that the poison, whatever its nature, was in the garbage at the time it left respondent's premises, and to further infer that it was there through some negligent act or omission of respondent. Proof may not be made by inference piled on inference. See *Wilson v. Northern Pac. R. Co.*, 44 Wn. (2d) 122, 265 P. (2d) 815 (1954).

Error is assigned to the trial court's refusal to find that the pigs died of 1080 poisoning. The evidence did not clearly preponderate in favor of such a finding. As the court found, some of the hogs, on eating the garbage, exhibited symptoms characteristic of 1080 poisoning, and others did not. Some died a lingering death, not characteristic of such poison, and others, eating the same garbage at the same time, survived without apparent harm. Appellant's veterinarian at first diagnosed the hogs' condition as a starch deficiency. An autopsy which he performed led him to believe that the particular hog died of a "slow toxic poisoning," as evidenced by cirrhosis of the liver, not indicative of 1080. During the period the hogs were dying, stomachs from five of them were tested at a laboratory for the presence of fluorine only. The fluorine content was normal, the court found, and a recognized test for sodium fluoroacetate was not undertaken. There was no evidence that 1080 had ever been used on the premises of the appellant nor at Firland Sanatorium. Justifiably, the court found the proof insufficient to establish that the hogs died from the effects of sodium fluoroacetate poisoning.

■ There being no clear preponderance of the evidence in favor of a finding that the respondent negligently placed in the garbage, or negligently permitted to be placed there, sodium fluoroacetate or any other poison, the trial court's finding that the appellant had failed to sustain the burden of proving negligence must be upheld. *MacKenzie-Richardson, Inc. v. Allert*, 45 Wn. (2d) 1, 272 P. (2d) 146 (1954).

■ Appellant further relies upon a theory of express and implied warranty. The argument in regard to express warranty is unsupported by any assignment of error; therefore, the question is not before us for consideration. (Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953).

Error is assigned to the court's refusal to make and enter the following conclusion of law:

"That in said purchase of 'edible' garbage by plaintiff from defendant, defendant did impliedly warrant that said hog food was reasonably fit for its intended use and was free from deleterious substances poisonous to hogs; that defendant is guilty of the breach thereof."

■ Before an implied warranty will be imposed by law, there must be a sale of goods within the meaning of the sales act, Rem. Rev. Stat., § 5836-1 *et seq.* [*cf.* RCW 63.04.010 *et seq.*]. We have held that a contract such as we have here is a public service contract. *Cornelius v. Seattle*, 123 Wash. 550, 213 Pac. 17 (1923). There appears to be no relation between the forty dollars per month paid for the privilege of removing the garbage and the value of the garbage, the amount of which would vary from month to month. It is questionable whether the transaction can reasonably be construed as a sale. In any event, the circumstances that Firland Sanatorium was not a dealer in garbage and could not reasonably be expected to undertake that its garbage would be kept free from deleterious substances, as well as the wording of the agreement, suggest that no warranties, express or implied, were intended. The trial court found as a fact that no representations were made, and this finding has not been challenged.

Much significance is attached by the appellant to the use of the word "edible" in describing the garbage which he undertook to remove. It is apparent from the contract, as well as from the evidence, that the word was used merely to identify the type of garbage appellant would be obliged to remove and not to induce a purchase.

Subsection (1) of Rem. Rev. Stat., § 5836-15, reads:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

It is true that appellant made known to respondent the use which he intended to make of the garbage, but did he rely on the respondent's skill and judgment? There is neither allegation, proof, nor finding that he did, nor is any error assigned to the trial court's failure to make such a finding. The circumstances negative reliance. We have held that, before the court may imply a warranty of fitness, the element of reliance must be alleged and proven. *Jones v. Mallon,* 3 Wn. (2d) 382, 101 P. (2d) 332 (1940); *Ringstad v. I. Magnin & Co.,* 39 Wn. (2d) 923, 239 P. (2d) 848 (1952). The record fails to support a conclusion that any warranty was implied.

The judgment is affirmed.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.