[No. 35109.    Department Two.    October 20, 1960.]

JOSEPHINE MCKINNEY, by her Guardian ad Litem, Elmer Frederick McKinney, et al., Respondents, v. DONALD FRODSHAM et al., Appellants.[1]

[1]Reported in 356 P. (2d) 100.

*Donald E. Spickard* and *William R. Lanthorn,* for appellants Frodsham.

*Knapp and Knapp,* for appellant Volkswagen Washington, Inc.

*Joseph A. Barreca* and *Orvin H. Messegee,* for respondents.

FINLEY, J.—This action is brought by plaintiff in his own behalf, and as guardian *ad litem* for his injured five-year-old daughter. The daughter sustained personal injuries when the left-front door of a 1955 Volkswagen two-door sedan in which she was a passenger flew open as the automobile rounded a curve on North 46th Street, Seattle. The child, riding in the rear seat of the car, fell part way through the open door. Her leg caught under the car's left-front seat, and her head struck the paved surface of the street before she could be pulled back to safety inside the car by its driver, Mr. Frodsham. Defendants are Mr. and Mrs. Donald Frodsham, owners of the car; and Volkswagen Washington, Inc., from which the Frodshams had purchased the automobile as a new car some two years prior to the accident.

Plaintiff alleged several acts of negligence as to the Frodshams, including (1) failure properly to close and fasten the door, and (2) use of the car at a time when the door-latch mechanism was in a state of disrepair. As against Volkswagen Washington, Inc. (hereinafter referred to as the dealer), plaintiff alleged negligence in selling the car in that, at the time of the sale, the door-latch mechanism was defective and foreseeably dangerous to passengers.

Each of the defendants denied the pertinent allegations of negligence, and asserted that the sole cause of the accident was the negligence of the other defendant. After a jury trial on the merits, a verdict was returned, and a judgment entered against both defendants. The dealer and the Frodshams have appealed.

Both appellants challenge the sufficiency of the evidence against them and assign error to certain of the instructions given to the jury. Appellant dealer also assigns error to the admission of certain evidence and to the refusal of the trial judge to give certain requested instructions. The basic claims of the respective appellants may be briefly summarized as follows: First, appellant dealer urges (1) that no competent evidence was introduced to prove that the door-latch mechanism on the car was defective at the time the car was sold to the Frodshams; and (2) even if such defect did exist, the dealer had no duty to inspect the car so as to discover it (there is no evidence of actual knowledge of the defect). On the other hand, appellants Frodsham contend (1) that competent evidence shows that the sole cause of the accident was a defective door-latch mechanism; (2) that they had no reason to know of the defect prior to the accident; and (3) in view of the fact that the respondent himself introduced the evidence of the door-latch defect, the doctrine of *res ipsa loquitur*, under which the trial judge submitted the case against them to the jury was erroneously applied.

We will consider first the question of the duty of a new car dealer in terms of inspection for possible defects prior to sale. Appellant dealer contends that it had no duty to make any inspection whatsoever, relying upon *Ringstad v.*

*I. Magnin & Co.* (1952), 39 Wn. (2d) 923, 239 P. (2d) 848 wherein we held that

" 'A vendor of a chattel manufactured by a third person . . . who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not subject to liability for harm caused by the dangerous character or condition of the chattel even though he could have discovered it by an inspection or test of the chattel before selling it.' Restatement, Torts, 1948 Supp., § 402."

In the instant case the trial judge rejected a proposed instruction based upon the above-mentioned rule and instead applied the following rule:

"An automobile dealer, receiving new cars from the manufacturer, has a duty to inspect the vehicles before selling them, and is charged with knowledge of what a reasonable inspection, in the exercise of ordinary care, would disclose. The dealer is not required to dismantle the car in making such inspection, but is required to observe the vehicles as received, observe whether they operate properly, and investigate and check the operation of parts or appliances with respect to safety before delivery of the vehicles to purchasers. In making such inspection and examination, the dealer is required to utilize the peculiar opportunity and competence which a dealer in such automobiles has or should have.

"An automobile dealer, who sells an automobile for use by the purchaser, his family and guests, if such automobile is in fact in a dangerous condition, is liable for injuries proximately resulting from a use of the automobile for the purpose intended, if the dealer

"(a) knows, or in the exercise of reasonable care should know, that the automobile is dangerous for the use for which it is supplied, and

"(b) has no reason to believe that the purchaser or others using the automobile for the intended purpose will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform the purchaser of such dangerous condition.

"A dealer is not liable for injuries resulting from latent defects in an automobile sold by him which are in fact unknown to him, and which are not discoverable by reasonable inspection."

We are convinced that this instruction encompasses a correct statement of the rule of law applicable to *dealers* selling new automobiles.[2] The question of the duty of the *manufacturer* is not before us.

We believe that the rule applied by the trial judge is reconcilable with the rule enunciated in *Ringstad v. I. Magnin & Co., supra.* The rule applied in *Ringstad,* as hereinbefore quoted, was taken verbatim from Restatement, Torts, 1948 Supp., § 402. The trial judge in the instant case wrote a rather comprehensive memorandum opinion in which he explained his rejection of the rule with the following statement:

"Defendant places much reliance on the change in the text of § 402 of the Restatement of Torts, original edition, which is made by the 1948 supplement. Counsel has in his brief underscored the language about inspection, arguing that the dealer never need make one. The text does not go so far. The rule, as revised, refers to a seller 'who neither knows nor has reason to know' that the article is likely to be dangerous. The comment which follows indicates that the text is referring to defects discoverable only by factory-type inspections, not those which are readily apparent by the observation which ought reasonably to be made by an informed dealer."

We agree with this statement and particularly with the last sentence thereof. In comment *b* to § 402, the rationale behind the rule is set forth as follows:

" . . . The burden on the vendor of requiring him to inspect chattels he reasonably believes to be free from hidden danger outweighs the magnitude of the risk that a particular chattel may be dangerously defective. . . ."

We can see that a factory-type inspection requiring that each new car received by a dealer be dismantled to determine whether it is properly built would place such a burden upon the dealer as to be unjustified in terms of the

[2]For a discussion of the responsibility of a dealer in used automobiles, with particular emphasis on the liability of one who undertakes to overhaul and recondition such used cars for sale to the general public, see *Bock v. Truck & Tractor, Inc.* (1943), 18 Wn. (2d) 458, 139 P. (2d) 706.

possibility of latent defects. See Anno., 99 A. L. R. 243. However, the rule as enunciated by the trial judge in the instruction above quoted expressly disavows any requirement of such a burdensome inspection.

Thus, as we view it, this instruction states a rule which in no way contravenes § 402 of the Restatement of Torts as adopted by this court in *Ringstad v. I. Magnin & Co., supra.* Further, the instruction appears to be in accord with the following statement appearing in 5A Am. Jur., Automobiles and Highway Traffic, 655, 656, § 662:

"While an automobile dealer is under no obligation to test a new car for the purpose of discovering latent defects or hidden dangers, he is required to observe the cars as they are received, operate them to see if they operate properly, investigate the cause of any unusual conditions, and investigate the condition of and check the operation of parts or appliances which he might reasonably expect, as a result of his experience and knowledge of the cars, would need attention before being delivered to purchasers. . . . "

■ We now may turn to an examination of the evidence upon which respondents relied to establish negligence on the part of appellant dealer. In the light of the applicable rule of law, the question we must ask is not whether a defect did in fact exist; rather, the question is whether the evidence was such that the jury could reasonably infer that such a defect existed as to be discoverable upon a reasonable observation and inspection of the automobile at the time it was sold to the Frodshams.

Respondents called an expert witness, Dr. Michael Guidon, III, who is an automotive engineering professor at the University of Washington. Dr. Guidon examined and tested the doors of the Frodshams' Volkswagen shortly after the accident. He also examined and tested some fifteen or sixteen other 1955 Volkswagens. From his inspection and testing of these vehicles, Dr. Guidon testified as to the following conclusions: (1) Because of the shape of certain of the component parts in the 1955 Volkswagen door latch, the doors in some cases, though apparently fully closed, could be pulled or pushed open without manipulation of the door handle. (2) On the Frodshams' Volkswagen at the time of

his tests (conducted shortly after the accident in 1957), the left-front door could be thus opened upon application of from ten to twenty-five pounds of force applied to the latch area of the door. (3) On approximately twenty-five per cent of the sixteen cars tested, "the door latch was very similar to the Frodsham car."

The design of the striker and the striker plate, and their relative positions when the door was in what Dr. Guidon characterized as the "apparent closed" position, is illustrated by the following diagram.

For the door to be fully closed, the striker would be forced by its activating spring completely into the larger recession. When in the smaller recession, the striker is in the "safety" position.

When asked to explain why not all of the car doors which

were tested opened easily from the "apparent closed" position, Dr. Guidon answered:

"There are varying factors that cause a door to open easier or harder; such things as the tension in that spring that is pushing the plunger against the latch mechanism against the striker; the amount of oil, that is, oil or grease, or, you might say—if you put your hand on a door mechanism you will find a sticky resin on it due to the grease that oxidizes. There are some that have a lot of resin against some that are greased regularly. They will vary."

Testimony from other witnesses was to the effect that Volkswagen doors were frequently difficult to close. Not uncommonly, when the windows were rolled up, the airtight construction of the automobile was such that great force was required to close the door against the air pressure inside.

From the foregoing evidence, the jury could fairly find that the combination of design of the lock mechanism, the knowledge that resin accumulations from oxidized grease cause increased friction (a factor of which a competent mechanic should be aware), and the difficulty in closing Volkswagen doors should have imparted to the dealer notice of the potential danger to occupants of the automobile. Furthermore, the fact that two years later one out of every four of the cars that were tested had a left-front door which could be opened with a relatively light force of ten to twenty-five pounds, accompanied by the other evidence presented, could reasonably lead one to conclude that had the doors been tested properly in 1955 the defect would have manifested itself.

We must conclude that there was substantial evidence on which to find the dealer liable because of negligence. The judgment against Volkswagen Washington, Inc., is affirmed.

■ We turn now to a consideration of the liability of the appellants Frodsham. In *Morner v. Union Pac. R. R. Co.* (1948), 31 Wn. (2d) 282, 196 P. (2d) 744, we stated the rule for the application of *res ipsa loquitur* as follows:

"The doctrine of *res ipsa loquitur*, an expression which, literally translated, means 'the thing speaks for itself,' as applied in this state and most jurisdictions is as follows:

When the agency or instrumentality which caused the injury complained of is shown to have been under the exclusive control and management of the defendant or his servants, and the accident, or injurious occurrence, is such as in the ordinary course of events does not happen *if those who have the control and management of the agency or instrumentality* use proper care, the injurious occurrence of itself, in the absence of explanation by the defendant, affords reasonable evidence, or a permissible inference, that such occurrence arose from or was caused by the defendant's want of care. . . . [Citing many cases and secondary authorities.]" (Italics ours.)

In the same case we quoted from 8 Encyclopedia of Evidence 872 *et seq.*, that, in part,

" ' . . . there must be no other equally proximate, apparent cause of the accident besides that for which defendant is responsible. So where the acts or omissions of two or more independent persons are apparently equally immediate causes of an injury, the negligence of neither of such persons can be presumed. . . . ' "

In *Shay v. Parkhurst* (1951), 38 Wn. (2d) 341, 229 P. (2d) 510, a suit to recover damages for personal injuries resulting from a fall through the suddenly opening door of a moving taxicab, we said:

"We know from common observation and experience that taxicab doors do not fly open while rounding a curve at a reasonable speed if those who have control of the doors have used proper care. The jury could reasonably have believed that either the door latch was defective or that the door was not closed securely."

However, in that case we did not have the additional circumstances that we have here. We have already described the detailed and uncontradicted evidence presented by the respondents that the door latch was defectively *designed*, and was capable of releasing the door under relatively little force. The respondents have brought into this case another "equally proximate, apparent cause of the accident."

It is a well established rule that a plaintiff who can come within *res ipsa loquitur* is free to attempt to bolster his case by alleging and attempting to prove specific acts of negli-

gence. *Kemalyan v. Henderson* (1954), 45 Wn. (2d) 693, 277 P. (2d) 372. The rule is no more than an amplification of the statement that the accident would not have happened in the ordinary course of events had not the defendant been negligent in *some* way, whether the plaintiff can identify and prove that way or not. But where the plaintiff, by his own witnesses, introduces substantial evidence that a *third person* was negligent, he has himself made it impossible to say that under the circumstances the probabilities are that, but for some negligence by the defendant, the injury would not have occurred. We have on two occasions (*Gardner v. Seymour* (1947), 27 Wn. (2d) 802, 180 P. (2d) 564, and *Wellons v. Wiley* (1946), 24 Wn. (2d) 543, 166 P. (2d) 852) quoted with approval the following language from *Klein v. Beeten* (1919), 169 Wis. 385, 172 N. W. 736, 5 A. L. R. 1237:

" . . . while the inferences allowed by the rule or doctrine of *res ipsa loquitur* constitutes such proof, it is only where the circumstances leave no room for a different presumption that the maxim applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it cannot be invoked. . . . "

The instruction regarding *res ipsa loquitur* was erroneously given. The judgment against appellants Frodsham must be reversed, and the case as to them remanded for a new trial limited to the issue of liability.

Respondents shall recover partial costs against Volkswagen Washington, Inc., to be apportioned by the clerk of this court on the basis of reasonable evaluation of the attorney time and printing costs allocable to the handling of the issues litigated here between Volkswagen Washington, Inc., and the respondents. The balance of the costs shall abide the final outcome of issues between respondents and appellants Frodsham.

It is so ordered.

WEAVER, C. J., ROSELLINI, OTT, and FOSTER, JJ., concur.

March 23, 1961. Petitions for rehearing denied.