BROWNE v. FENESTRA, INC.

1. SALES—OVERHEAD GARAGE DOOR—NEGLIGENCE—IMPLIED WARRANTY OF FITNESS.

> Evidence adduced in action for injuries received when recently installed overhead garage door fell on plaintiff *held*, to justify jury's finding of negligence on part of supplier of the door as well as of independent contractor installer and to justify trial judge's instructions on issue of liability on theory of negligence and breach of implied warranty of fitness.

2. SAME—REQUEST TO CHARGE—INDEPENDENT CONTRACTOR—DEFECTIVE OVERHEAD GARAGE DOOR.

> Refusal to give request to charge that defendant supplier of overhead garage door would not be liable if jury found defendant installer was an independent contractor was proper since it was not a complete statement of the pertinent law in view of evidence that the supplier had delivered a defective door, the matter of immunity from liability for acts of the installer being unnecessary under the circumstances.

3. SAME—IMPLIED WARRANTY—PRIVITY.

> Defendant retailer's defenses of no privity, disclaimer of liability, and that an express warranty eliminates a legally implied warranty of fitness were not available to such defendant in action brought by plaintiff, a 17-year-old granddaughter of purchaser of overhead garage door that was defective and negligently installed by independent contractor, for injuries received when door fell on and injured her (CL 1948, § 440.49).

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence §§ 102, 134.
Liability for injury from overhead door.  83 ALR2d 743.
[2] 38 Am Jur, Negligence § 369.
[3] 38 Am Jur, Negligence §§ 21, 22.
[4] 15 Am Jur, Damages § 223.
Excessiveness of damages in action by person injured for personal injuries not resulting in death (for 1941 to 1950).  16 ALR2d 3.

4. DAMAGES—EXCESSIVE VERDICT—BACK INJURIES—RECORD.

 Verdict of $15,000 for 17-year-old plaintiff for back injuries she received when overhead garage door, purchased from defendant retailer, supplied by defendant supplier, and installed by defendant independent contractor installer *held,* not excessive under record presented.

Appeal from Wayne; Bowles (George E.), J. Submitted March 4, 1965. (Calendar Nos. 72–74, Docket Nos. 50,315, 50,810, 50,794.) Decided May 11, 1965.

Declaration by Lillia Browne against Fenestra, Incorporated, a corporation, Montgomery Ward & Company, a corporation, and William R. McQuillan for injuries incurred when a garage door fell upon plaintiff. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Dann, Rosenbaum, Bloom & Kaufman,* for plaintiff.

*Cary, BeGole & Martin* (*Lawrence A. Bohall,* of counsel), for defendant Fenestra, Inc.

*Butzel, Eaman, Long, Gust & Kennedy* (*Addison D. Connor,* of counsel, for defendant Montgomery, Ward & Company.

*Donald W. Sargent,* for defendant McQuillan.

BLACK, J. Louvenia Johnson and her daughter, Gladys Minnis, owned a home situated on St. Aubin in Detroit. The separate two-car garage on the premises was equipped with old fashioned folding doors. Mrs. Johnson desired to have them replaced with a modern overhead door she could handle. In September of 1958 she purchased such a door from defendant Montgomery, Ward & Co. The door had

been supplied to Ward by defendant Fenestra, Inc., and was furnished by the latter for installation on the job. Mrs. Johnson did not know of Fenestra's part in the transaction until after the date of plaintiff's injuries. She was told at the time of purchase that " a man would be out to install it." By the contract of purchase Ward agreed, for the total consideration of $275.47, as follows:

"We are to supply and instal one 16-foot Strand Steel receding garage door after reworking opening."

Defendant McQuillan independently contracted with, or was hired by, defendant Fenestra to install the door at the Johnson-Minnis residence. Fenestra, according to the proof, agreed to supply all door parts. McQuillan, according to the proof, agreed to supply all necessary lumber for "working" or "reworking" the garage door opening. McQuillan installed the new door sometime during the month of its purchase. Mrs. Johnson testified that the door worked properly thereafter, and that no trouble with it developed until, some 3 or 4 months next following the installation, the accident occurred which gave rise to this suit. She testified further that the "lip" of the left "rail" or "track," which carried the door to and supported its "up" position, was bent at the time of installation. She testified that she noticed such bending and called it to defendant McQuillan's attention. On direct examination she testified:

"*Q.* To whom was it that you mentioned the matter of the bent rail?
"*A.* I mentioned it to Mr. McQuillan.
"*Q.* Himself?
"*A.* Yes.
"*Q.* Did Mr. McQuillan say anything to you?
"*A.* He said just it was okay, there was nothing wrong with it.

' *"Q.* On which railing was that? The one of the railings on the left side of the garage or the one on the right side, as you faced the big door?

*"A.* There was one on the left side as you face the alley on the big door."

On cross-examination she testified:

*"Q.* Can you describe this bend in the rail for us please?

*"A.* It was just the bottom lip of the rail that had the bend in it."

The plaintiff, a granddaughter of Mrs. Johnson, was 17 years of age on January 30, 1959. That day, on request of the grandmother, she attempted to close the door immediately after the grandmother had driven her car into the garage. The door fell on plaintiff, inflicting injuries and damages assessed by the jury at the sum of $15,000.

Plaintiff sued Ward, Fenestra, and McQuillan generally on the theory of actionable negligence and of breach of a legally implied warranty of fitness. Her end position is that Ward by such implied warranty of fitness and breach thereof became liable to her for personal injuries sustained; that Fenestra by supplying defective material and instructions to McQuillan, and McQuillan by defective workmanship, contributed together in causing the door to fall, and that all three defendants became jointly and severally liable for the injuries she sustained when the door fell. The jury agreed with plaintiff and returned a general verdict in amount as above, upon which verdict judgment was entered against the three defendants. They appeal separately.

The proof fully justified the jury's finding that Fenestra and McQuillan were separately guilty of negligence and that their separate acts of negligence contributed causally to the fall of the door. The jury

had a right to find that Fenestra delivered on the job
an overhead door, the rail of which was bent at a
point on the lip in such manner as to permit the
wheels carrying the door to "run off the track" at an
overhead point. As for McQuillan, and quite aside
from the proof tending to show that he did not install
the door properly after having "reworked" the exist-
ing door opening, the jury could find and apparently
did that he disregarded Mrs. Johnson's reference to
the bent rail and that he went ahead with assurance
to her that "it was okay, there was nothing wrong
with it." All this was sufficient to justify the jury's
verdict as against Fenestra and McQuillan, and to
justify the trial judge's instructions on the issue of
liability as charged against them.

1. We have tested the trial judge's charge to the
jury in array with Fenestra's allegation that the
judge erred "in failing to instruct the jury as to the
nonliability of the defendant Fenestra for the acts of
an independent contractor and in refusing to give
defendant Fenestra's request to charge No 15 or the
equivalent thereof."[1]

During oral argument counsel for Fenestra con-
ceded frankly that his request No 15 was not a "com-
plete" statement of the law and that the trial judge
did not err in refusing to grant same. He did claim
that the judge was under affirmative duty to charge
the jury as to the law applicable to Fenestra's "in-
dependent contractor" defense of immunity from
liability for the acts of McQuillan. Whether the
judge was under such affirmative duty need not be
discussed (see *Sakorraphos* v. *Eastman Kodak
Stores, Inc.*, 367 Mich 96). The judge's affirmative

---

[1] Fenestra's request No. 15 reads:
"15. I charge you that if you find that defendant McQuillan is
an independent contractor, not subject to the control and super-
vision of the performance of the work, by defendant Fenestra, then
your verdict must be no cause of action in favor of defendant
Fenestra."

duty was that of charging the jury only as to the presented question of negligence of Fenestra, in delivering an allegedly defective door on the job, and as to the question of causation if the jury found such negligence on the part of Fenestra. The judge did so charge, properly. We find no error here.

2. The important specifications of error submitted by defendant Ward have recently been considered and found wanting in *Piercefield* v. *Remington Arms Company, Inc.,* 375 Mich 85, and in one of the recent authorities cited therein, *Henningsen* v. *Bloomfield Motors, Inc.,* 32 NJ 358 (161 A2d 69, 75 ALR2d 1). Ward's defenses of no privity, disclaimer of liability, and that an express warranty eliminates a legally implied warranty of fitness, were not, *Piercefield* and *Henningsen* considered, available to it. The trial judge therefore did not err in refusing to grant Ward's requests to charge Nos 4 and 7 as listed at the margin.[2]

See what was said in *Henningsen* of such a disclaimer of liability and of contention that an express warranty eliminates any warranty of fitness which might be implied by law. We agree with the reasoning of the New Jersey supreme court in such regard. Such reasoning appears in the opinion under the heading (p 385) "The effect of the disclaimer and limitation of liability clauses on the implied warranty of merchantability."

Aside from the above it is important to stress a procedural difference between *Piercefield* and this case of Browne. In *Piercefield* two purposely restricted questions of law came up via granted uniform motions to strike made by all defendants. All

[2] "4. That it was lawful for Montgomery Ward & Co., Inc., the seller of the door at retail, to limit its liability by contract so far as concerns the express warranty of Montgomery Ward & Co., Inc., and to provide by contract that there was no implied warranty."

"7. Lillia Browne, the plaintiff in this case, cannot bring an action for breach of contract when she was not a party to the contract."

such defendants, joining in one brief, relied here solely upon such questions (validity of the defenses of no privity and absence of notice under section 49 of the uniform sales act; CL 1948, § 440.49 [Stat Ann § 19.289][3]).

Whether *Piercefield* can make out a case, under the second count of his declaration, as against one or all of the defendants sued by him, and whether any one or more of such defendants is possessed of a defense (other than of no privity and failure of section 49 notice) has not as yet been determined. Here the defendants Fenestra and McQuillan have been found, upon trial to a jury of disputed facts, guilty of actionable negligence. The same jury has found defendant Ward responsible to plaintiff for breach of an implied warranty of fitness. *Piercefield*—with *Henningsen* above—decided, so far at least as concerns the case at bar, only that present defendant Ward was not entitled to rely upon its defenses of no privity, disclaimer of liability, and elimination of implied warranty by express warranty.

To conclude: Defendant McQuillan's allegation, that the jury's verdict was excessive, has not been overlooked. An examination of all portions of the record to which counsel have directed our attention tends to sustain rather than unfound the trial judge's conclusion that the verdict as to amount was factually supported. There was medical testimony, which the jury had a right to believe, that the results of plaintiff's injuries will persist for an indefinite time. The medical testimony to which we refer was of this purport:

"*Q.* Now, doctor, do you have an opinion, based on reasonable medical certainty, as to whether the condition that you found on September 27, 1962 would be likely to continue into the future?

[3] See footnote 2, 375 Mich 89.—REPORTER.

"*A.* Yes, I believe that in view of the fact that this girl has had this trouble for almost four years now, it certainly would be expected that this condition would persist for an indefinite time into the future. At the time I saw her on the first occasion I thought she would have trouble for some time, and this has been confirmed by her recent examination this year.

"*Q.* Is there any way of telling now, doctor, as to how long this girl is likely to have back trouble?

"*A.* I could not say definitely. All I can say is I am sure she will continue to have the trouble for a long time into the future."

No other question requires discussion. Judgment affirmed. Costs to plaintiff.

T. M. KAVANAGH, C. J., and KELLY, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred with BLACK, J.

DETHMERS, J., concurred in result.