RICHARD BERG, *Appellant,* v. ARTHUR STROMME *et al.,*
*Respondents.*

*Horton, Wilkins & Horton* and *Hugh B. Horton,* for appellant.

*Peterson, Taylor & Day* and *Stanley D. Taylor,* for respondents.

**REVIEW GRANTED BY SUPREME COURT.**

GREEN, J.—Plaintiff, Dr. Richard Berg, brought this action against defendants, d/b/a Stromme Motors, for damages alleging the sale of and refusal to replace or satisfactorily repair a defective new car. At the close of plaintiff's evidence, the trial court dismissed the action. Plaintiff appeals.

Construing the evidence and the inferences therefrom most favorably to the plaintiff, the following facts become evident. Plaintiff is a medical doctor specializing in psychiatry in Pasco and is also in the business of raising and breeding horses. His professional and business activities require him to travel extensively by automobile and often to tow a horse trailer.

In 1964, Dr. Berg went to Stromme Motors, where he had previously purchased several automobiles and a 3-horse trailer. He informed defendants of his needs, uses and desire to purchase a new automobile. Defendants recom-

mended a new Pontiac Bonneville Safari station wagon with a large engine and numerous extras. Plaintiff concurred in the recommendation, ordered such vehicle and took delivery on February 8, 1965. At the time of delivery, plaintiff executed a sales order and a conditional sale contract. These documents constitute the only written agreement between the parties.

Shortly after delivery, plaintiff experienced more than the usual minor new car problems, including among others, difficulties in steering, acceleration and shifting; a rough running, overheating and stalling engine; and a malfunctioning air conditioner. It is not necessary to list all of the defects; however, they were so serious as to cause plaintiff to request defendants replace the car. Defendants refused but did attempt to repair the defects. As a result, the car was in the service department for 20 days within the first four months and a total of 45 days between the date of delivery, February 8, 1965 and the end of that year. Meanwhile, on June 10, 1965, plaintiff tendered the car back to the Pontiac Motor Division. This tender was also refused.

Although never satisfied with its performance, plaintiff continued to drive the car. Defendants were unable to placate plaintiff's constant requests for satisfactory repairs. Plaintiff unsuccessfully attempted to sell the car on the open market, and ultimately accepted a used car dealer's wholesale price. Thereafter, plaintiff brought this action to recover damages. The trial court construed the allegations of the complaint as an action for breach of implied warranty and granted defendants' motion to dismiss at the close of plaintiff's evidence. The dismissal was based upon the following grounds: (1) There was no implied warranty of fitness because the vehicle was sold by its trade name; and (2) there was a valid disclaimer of express and implied warranties agreed to by the parties. Since the assignment of error raised on appeal is general in nature, it must be assumed that it is directed only to the two grounds given by the trial court for dismissal. Other argument not supported by an assignment of error is not before this court for con-

sideration, CAROA 43; *Boyle v. King County,* 46 Wn.2d 428, 433, 282 P.2d 261 (1955).

The trial court correctly applied the existing law of this state and properly dismissed the complaint. Dr. Berg signed an Automobile Sales Order on February 8, 1965. Immediately preceding his signature is printed:

> I have read the matter printed on the back hereof and agree to it as a part of this order the same as if it were printed above my signature. The front and back of this order comprise the entire agreement pertaining to this purchase, and no other agreement of any kind, verbal understanding or promise whatsoever, will be recognized. Receipt of a copy of this order is hereby acknowledged.

On the reverse side of the document is the following provision:

> (3) There is no guarantee on the automobile in connection with this agreement. The purchaser has no guarantee whatsoever unless a separate written agreement is obtained at the time of sale. This applies to new cars as well as used cars. The purchaser must have a written guarantee in his possession to secure an adjustment.

The conditional sales contract signed by plaintiff contains the following provision.

> 2. No warranties, expressed or implied, have been made by the Seller unless endorsed hereon in writing.

No dealer's warranty of any kind was endorsed on the Automobile Sales Order or conditional sales contract.

It seems clear from these provisions that, with respect to the purchased vehicle, defendants by agreement disclaimed all express or implied warranties to plaintiff. Disclaimer provisions of this type are enforceable.

> [W]hen a seller and a buyer enter into a contract in which the seller expressly refuses to give any warranty, and the contract is not induced by fraud, no warranty of *any kind* can be implied by law.

(Italics ours.) *McDonald Credit Serv., Inc. v. Church,* 49 Wn.2d 400, 301 P.2d 1082 (1956). See also *Dimoff v. Ernie*

*Majer, Inc.,* 55 Wn.2d 385, 347 P.2d 1056 (1960); *McInnis & Co. v. Western Tractor & Equip. Co.,* 63 Wn.2d 652, 388 P.2d 562 (1964); *Nakanishi v. Foster,* 64 Wn.2d 647, 393 P.2d 635 (1964); RCW 63.04.160 and 63.04.720. *Cf. Northwest Collectors, Inc. v. Gerritsen,* 74 Wn.2d 690, 446 P.2d 197 (1968). There was no fraud alleged or proved in the instant case.

Plaintiff forcefully argues in his brief that such disclaimer should be held invalid as against public policy and that dealers should be held strictly liable for defective products. It is contended by plaintiff that the state of New Jersey did so in *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); Restatement (Second) of Torts § 402A (1965) adopted the same rule. He also points out that other jurisdictions and legal writers are likewise critical of disclaimer provisions. The position taken by plaintiff and the support for it articulated in *Henningsen v. Bloomfield Motors, Inc., supra,* was alluded to in *Norway v. Root,* 58 Wn.2d 96, 361 P.2d 162 (1961), where our Supreme Court said at 100:

> It is repetitive, but we desire to expressly limit the extent of this decision by again pointing out that this is not an action on an implied warranty, as was the case in *Henningsen v. Bloomfield Motors, Inc., supra,* and we are not here concerned with the validity of the waiver of implied warranties.

Notwithstanding this language, our Supreme Court in the subsequent case of *McInnis & Co. v. Western Tractor & Equip. Co., supra,* recognized the disclaimer provisions when it said at 656:

> The rule is well settled that no warranty, express or implied, will be found where, as here, the seller expressly refuses by merger and disclaimer clauses to give any warranties. [Citing cases.]

Plaintiff cites *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969). This case is not factually apposite to the case at bar.

For the foregoing reasons, we must hold the trial court

was correct in dismissing plaintiff's complaint relying upon the disclaimer provision of the written agreements. Our Supreme Court has not yet seen fit to change the rule. In view of this holding, it is unnecessary to discuss the remaining error raised by plaintiff.

Judgment affirmed.

EVANS, C. J., concurs.

MUNSON, J. (dissenting)—Insofar as the majority opinion correctly relates the law of contractual warranties to the facts in the instant case, I concur. I do not believe that the matter should end there.

Our Supreme Court in *McKinney v. Frodsham,* 57 Wn.2d 126, 129, 356 P.2d 100 (1960), approving an instruction setting forth the law applicable to new car dealers, found that instruction in accord with the following statement appearing in 5A Am. Jur. *Automobiles and Highway Traffic* § 662 at 655, 656 (1956):

> While an automobile dealer is under no obligation to test a new car for the purpose of discovering latent defects or hidden dangers, he is required to observe the cars as they are received, operate them to see if they operate properly, investigate the cause of any unusual conditions, and investigate the condition of and check the operation of parts or appliances which he might reasonably expect, as a result of his experience and knowledge of the cars, would need attention before being delivered to purchasers.

See also 8 Am. Jur. 2d *Automobiles and Highway Traffic* § 650 at 208 (1963). The court also stated in *McKinney* that the question of the duty of the manufacturer was not before them at that time.

In *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969), our Supreme Court adopted the Restatement (Second) of Torts § 402A (1965) position of strict liability as applied solely to manufacturers. However, Restatement (Second) of Torts § 402A (1965), comment *f*, has within its definition of a seller, a retail dealer.

Plaintiff herein seeks to have this court (1) extend the principle of strict liability to the new car dealer, and (2) broaden the term "damages" to include economic or pecuniary loss, *i.e.*, where there has been no physical harm resulting in personal injury or property damage.

I believe the time has come to hold the disclaimer of an implied warranty of merchantability by a new car dealer contrary to public policy.

As noted in *Tresham v. Ford Motor Co.,* — Cal.2d —, 79 Cal. Rptr. 883, (1969), "historically strict liability in tort evolves from warranty." Some of the justifications for imposing strict liability are:

> [T]he seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Restatement (Second) of Torts § 402A, comment *c* at 349-350 (1965).

> Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products. . . . Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship.

*Vandermark v. Ford Motor Co.,* 61 Cal. 2d 256, 262, 391 P.2d 168, 171-172 (1964).

Because of social pressure to compensate innocent victims of personal injuries, and because remedies for such injuries have traditionally been provided by tort law, this court has joined those which have abolished privity requirements in actions for personal injuries from defective products. We have assumed that such a cause of action sounds in tort and thus is unhampered by the statutory impediments to relief for breach of warranty. See *Heaton v. Ford Motor Co.*, 248 Or 467, 435 P.2d 806 (1967); *Wights v. Staff Jennings, Inc.*, 241 Or 301, 405 P.2d 624 (1965). Where a product is defective within the meaning of the Restatement (Second) of Torts § 402A (1965) and causes personal injury, the injured party can recover for his injuries against any seller of the defective product, without regard to such warranty notions as notice, disclaimer, or whether the warranty was express or implied.

*Oregon ex rel. Western Seed Prod. Corp. v. Campbell*, 250 Ore. 262, 442 P.2d 215, 217 (1968). See also *Clary v. Fifth Avenue Chrysler Center Inc.*, 454 P.2d 244 (Alas. 1969); *O. S. Stapley Co. v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968); *Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill. 2d 339, 247 N.E.2d 401 (1969); *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182 (1965); *Browne v. Fenestra, Inc.*, 375 Mich. 566, 134 N.W.2d 730 (1965); *Goldberg v. Kollsman Instrument Corp.*, 12 N.Y.2d 432, 240 N.Y.S.2d 592, 595, 191 N.E.2d 81 (1963); *Heaton v. Ford Motor Co.*, 248 Ore. 467, 435 P.2d 806 (1967).

But what is the status of the law between the discovery of the defect and before the occurrence of an accident, *i.e.*, the instant case. Strict liability is inapplicable because there has been no physical harm to person or property. *Seely v. White Motor Co.*, 45 Cal. Rptr. 17, 403 P.2d 145 (1965); *Price v. Gatlin & Columbia Tractor & Implement Co.*, 241 Ore. 315, 405 P.2d 502 (1965); *State v. Campbell, supra;* W. Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn. L. Rev. 791, 822-823 (1966). Yet, because of the contract between the parties which disclaims any warranty, expressed or implied, the consumer is without a remedy.

In *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 384, 404, 408, 161 A.2d 69, 75 A.L.R.2d 1 (1960), a landmark case in the development of strict liability, the court made the following statements:

Under modern conditions the ordinary layman, on responding to the importuning of colorful advertising, has neither the opportunity nor the capacity to inspect or to determine the fitness of an automobile for use; he must rely on the manufacturer who has control of its construction, and to some degree on the dealer who, to the limited extent called for by the manufacturer's instructions, inspects and services it before delivery. In such a marketing milieu his remedies and those of persons who properly claim through him should not depend "upon the intricacies of the law of sales. The obligation of the manufacturer should not be based alone on privity of contract. It should rest, as was once said, upon 'the demands of social justice.'" *Mazetti v. Armour & Co.,* 75 *Wash. 622, 135 P. 633, 48 L. R. A., N. S., 213 (Sup.Ct. 1913).*

Accordingly, we hold that under modern marketing conditions, when a manufacturer puts a new automobile in the stream of trade and promotes its purchase by the public, an implied warranty that it is reasonably suitable for use as such accompanies it into the hands of the ultimate purchaser. Absence of agency between the manufacturer and the dealer who makes the ultimate sale is immaterial.

Public policy at a given time finds expression in the Constitution, the statutory law and in judicial decisions. In the area of sale of goods, the legislative will has imposed an implied warranty of merchantability as a general incident of sale of an automobile by description. The warranty does not depend upon the affirmative intention of the parties. It is a child of the law; it annexes itself to the contract because of the very nature of the transaction. [Citing case.] The judicial process has recognized a right to recover damages for personal injuries arising from a breach of that warranty. The disclaimer of the implied warranty and exclusion of all obligations except those specifically assumed by the express warranty signify a studied effort to frustrate that protection. True, the Sales Act authorizes agreements between buyer and seller qualifying the warranty obligations. But quite ob-

viously the Legislature contemplated lawful stipulations (which are determined by the circumstances of a particular case) arrived at freely by parties of relatively equal bargaining strength. The lawmakers did not authorize the automobile manufacturer to use its grossly disproportionate bargaining power to relieve itself from liability and to impose on the ordinary buyer, who in effect has no real freedom of choice, the grave danger of injury to himself and others that attends the sale of such a dangerous instrumentality as a defectively made automobile. In the framework of this case, illuminated as it is by the facts and the many decisions noted, we are of the opinion that Chrysler's attempted disclaimer of an implied warranty of merchantability and of the obligations arising therefrom is so inimical to the public good as to compel an adjudication of its invalidity.

[W]e conclude that the disclaimer of an implied warranty of merchantability by the dealer, as well as the attempted elimination of all obligations other than replacement of defective parts, are violative of public policy and void.

In *Henningsen* the court points out that the bargaining position of the manufacturer-dealer and the consumer are not equal. To the contrary, in *State v. Campbell, supra,* the majority states "disclaimers and limitations of certain warranties and remedies are matters for bargaining." I do not believe the new car dealer accepts much bargaining in this area. Most have printed forms they use in their business. For example, the sales order plaintiff signed herein, has above his signature, at the bottom of the front page, the following sentence: "I have read the matter printed on the back hereof and agree to it as a part of this order the same as if it were printed above my signature." The back of the page, covered entirely with small print, under the caption "AGREEMENT", contains among other things the following provisions:

(3) There is no guarantee on the automobile in connection with this agreement. The purchaser has no guarantee whatsoever unless a separate written agreement is obtained at the time of sale. This applies to new cars as well as used cars. The purchaser

must have a written guarantee in his possession to secure an adjustment.

(4) . . . The purchaser hereby agrees that he has verified the description of the car to his own satisfaction, and that it is the car he desires to purchase, regardless of whether the description contained in the order is correct or not. In other words, there is no warranty as to the correctness of the description used.

. . .

(8) . . . The purchaser hereby agrees that the dealer shall in no way be held liable for any changes in designs or models, even though they do not meet the approval of the purchaser. The purchaser hereby agrees to take the car as produced by the manufacturer. Purchaser agrees to take delivery (and pay balance due) within three days after being notified that car is ready for delivery.

Both the sales order and the conditional sales contract herein were executed before the plaintiff took physical delivery of the vehicle. Under the evidence present in this record, he had no opportunity to inspect or drive the vehicle before he signed these documents. The day of the consumer having to accept what one plaintiff categorized as a "non-vegetative member of the citrus family"[1] should end. The consumer purchasing a new car pays, or contracts to pay, a substantial amount of money, *i.e.*, the sales order herein shows a total cash price of $6,048.14. As stated in *Appleman v. Fabert Motors Inc.*, 30 Ill. App. 2d 424, 431, 174 N.E.2d 892, 896 (1961):

The automobile business has been one of the leading businesses of the past half century. During that time certain practices and usages have become standard in the trade. A purchaser of a new automobile has the reasonable right to expect an automobile completely new in every respect and part, properly constructed and regulated, to provide safe, trouble free and dependable transportation.

---

[1] *Adams v. Peter Tramontin Motor Sales, Inc.*, 42 N.J. Super. 313, 126 A.2d 358 (1956).

To allow the dealer to effectively disclaim that the purchased automobile is at least reasonably fit for the ordinary uses it was manufactured to meet, is contrary to public policy.

If the reasons given for strict liability, *i.e.*, spreading cost of injuries resulting from defective products, consumer protection, and/or reduction of defects and improved safety of the products, have any validity, it is equally important to prevent misfortune occasioned by physical harm before it occurs. While damages recoverable under an implied-in-law warranty of merchantability may lack the dramatic appeal of personal injury or property damage, nevertheless the consumer in possession of a defective automobile has surely suffered damage. He should not be required to subject himself, his family, or third persons to a possible bloodletting before he can make a claim against a dealer for a defective automobile. The usual measure of damage for breach of warranty would be applicable.

There is sufficient evidence in the record to support plaintiff's allegation that this vehicle did not meet the standards of a warranty of merchantability. Whether the jury would award him any or all of his prayer would be for their determination under instructions in conformity with this opinion.

---

Petition for rehearing denied February 20, 1970.