## Anderson v. Zernich Clinic

*Lee G. Peglow,* for plaintiff.
*D. H. Trushel,* for defendant Zernich Clinic.
*L. B. Loughren,* for defendant Aliquippa Hospital.
*James A. McGregor, Jr.,* for defendant Weyandt.
*Thomas H. Thomson,* for defendant Zeller.

SAWYER, *P.J.* March 7, 1977 — Although couched in the form of a procedural motion for more specific pleadings, the actual issue before this court in this matter is the substantive one of whether the recent adoption by our Supreme Court of section 328D of the Restatement 2d Torts applies to medical malpractice cases. For the reasons stated herein, we find that the Supreme Court intended section 328D to apply to such cases. We,

therefore, will dismiss defendants' preliminary objections to the amended complaint and will deny their motions for a more specific pleading.

Plaintiff, Dennis L. Anderson, entered the Aliquippa Hospital on March 6, 1974, complaining of abdominal pains. According to his complaint, Dr. Stephen Zernich, Jr., performed an exploratory laparotomy on him the following day for a possible appendectomy. Plaintiff avers that at that time he was an 18-year old steelworker in excellent health, except for the abdominal pains. He alleges that, soon after reviving from the anesthetic used for the surgery, he felt a heaviness and severe pain in his left shoulder and arm. Plaintiff further avers that he has suffered a total loss of use of the muscles in his left arm between his shoulder and elbow as a result of that operation. On December 1, 1975, he filed a trespass action against the hospital, a clinic, three doctors and the nurse anesthetist who assisted in the operation.

Defendants, Aliquippa Hospital and Honey Weyandt, each subsequently raised a preliminary objection in the nature of a motion for a more specific complaint. After a hearing, this court sustained each of the objections on July 28, 1976, with an allowance for filing an amended complaint. Plaintiff filed a somewhat more specific complaint on August 30, 1976; the said defendants have responded by each raising substantially the same preliminary objection.

Pa. R. C. P. 1019(a) requires that "[t]he material facts on which a cause of action . . . is based shall be stated in a concise and summary form." The rule has been interpreted to mean that the "material facts" be stated with sufficient specificity to enable the adverse party to prepare his case: Baker v. Rangos, 229 Pa. Superior Ct. 333, 349-50, 324

A.2d 498, 505-06 (1974). Defendants contend that they cannot prepare a defense based on either of the complaints filed by plaintiff. They complain that, after his allegation as to facts already recited in this opinion, plaintiff merely makes conclusionary averments alleging defendants' negligence. Defendant hospital further contends that plaintiff has failed to aver that his present condition is the result of any specific conduct of an agent, servant or employe of the hospital.

In deciding this issue, this court notes that plaintiff has averred that he was unconscious at the time of the alleged malpractice due to the administration of an anesthetic. He argues that information regarding the cause of his injury is in the exclusive control of defendants. Our courts have recognized "that a plaintiff is to be given greater latitude when he pleads that the adverse party has exclusive or superior knowledge of crucial facts." Baker v. Rangos, supra, at 350, n. 4. Of course, even when a defendant has such exclusive knowledge, plaintiff must aver with some minimally sufficient specificity about material facts: Id. As defendants have pointed out, a court in this Commonwealth has found that conclusionary statements about negligence are insufficient to support a pleading in a medical malpractice case: Gray v. Oech, 49 D. & C. 2d 358, 361 (C. P. Bucks Co., 1970).

Nonetheless, the Gray case preceded Gilbert v. Korvette's, Inc., 457 Pa. 602, 327 A.2d 94 (1974), in which our Supreme Court explicitly adopted section 328D. If a new theory of recovery now exists, we must determine whether the facts as alleged by the plaintiff satisfy the elements of it. Although the defendants maintain that the Supreme Court never intended to extend section

328D to medical malpractice cases, we find their contention unconvincing and shall apply the section to the allegations of plaintiff's complaint.

In Gilbert, a three-year old child was severely injured when her foot was caught in the step of an escalator located at a department store. After receiving instructions that the doctrine of res ipsa loquitur might be applied to support a presumption of negligence against either of two defendants, the jury returned verdicts against both the department store and the elevator company which installed and maintained the escalator. The Superior Court reversed as to the elevator company: 223 Pa. Superior Ct. 359, 299 A. 2d 356 (1972). It reasoned that the doctrine could support a presumption of negligence against the department store but only an inference against the elevator company. The distinction, according to the Superior Court, lay in its finding that the department store owned a common carrier in the form of the escalator and the elevator company did not.

In its review of the case, the Supreme Court noted that res ipsa loquitur merely afforded a means of proving negligence and causation by circumstantial evidence. It lamented that "a simple matter of circumstantial evidence" had become tangled in finely-spun distinctions. The court sought to abolish those "highly formalistic distinctions unrelated to the functional question of the probative value of circumstantial proof. . . ." Gilbert v. Korvette's, Inc., supra, at 604-11. In place of Pennsylvania's multiple doctrines of circumstantial proof of negligence, the court turned to the "far more realistic, logical and orderly approach" of the Restatement. It concluded:

"Here, as in other cases, this Court accepts the

persuasive authority of the Restatement, and we adopt Section 328D as the law of this Commonwealth." Id., at 611-12.

On its face, section 328D would seem to apply just as much to medical negligence as to other types of negligence. The section, entitled Res Ipsa Loquitur, states, in pertinent part, that:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

"(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

"(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

"(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."

The comments to section 328D refer to medical malpractice cases. Clearly, the American Law Institute, in drafting the section, intended it to apply to medical personnel as well as other persons. sons.

Of course, our Supreme Court could have confined its adoption of the Restatement to matters other than medical malpractice. However, we see no indication that it did. The rationale of its decision was to abolish confusing and irrational distinctions which had seeped into the law of circumstantial evidence. To carve out an exception for medical malpractice cases would have been inconsistent with that rationale. Not one sentence in Gilbert suggests that the court intended an exception to its adoption of section 328D.

If a limitation to the application of section 328D does exist, defendants have the burden of defining it. Surely, the court did not want 328D to apply

merely to escalator accidents. Defendants have suggested that the court meant the section to apply only in those cases in which the doctrines of res ipsa loquitur or exclusive control could have been applied in this Commonwealth before Gilbert. They then argue that those doctrines never applied to medical malpractice situations.

Assuming arguendo that the Supreme Court did not want to extend doctrines of circumstantial proof to new situations, we would still find defendants' contention inadequate in two regards. In the first place, our courts did not totally exempt medical practitioners from the doctrines of res ipsa loquitur and exclusive control. The leading case in this area, Robinson v. Wirts, 387 Pa. 291, 127 A. 2d 706 (1956), merely ruled that it would not apply those doctrines to the facts of that case. The court indicated those doctrines could apply if an instance of medical malpractice were so egregious that a layman could reasonably infer negligence without expert testimony: Id., at 294-295, 297-99.

Secondly, the Gilbert decision was not limited to reforming the principles of res ipsa loquitur and exclusive control. As the Supreme Court painstakingly explained, at least three separate companion doctrines of circumstantial proof existed in Pennsylvania at the time of the decision, "res ipsa loquitur, exclusive control and an untitled evidentiary rule of simple circumstantial evidence." Gilbert v. Korvette's, Inc., supra, at 609. Gilbert sought to reform this whole area. Circumstantial evidence has always been acceptable in medical malpractice cases. Without using the terms res ipsa loquitur or exclusive control, courts have permitted juries to infer the negligence of physicians despite the absence of direct evidence of

medical standards. See Davis v. Kerr, 239 Pa. 351, 86 Atl. 1007 (1913); Smith v. Yohe, 412 Pa. 94, 194 A. 2d 167 (1963).

Finally, we find that the application of 328D to this case is consistent with the policy considerations in Gilbert. The Supreme Court noted, with justifiable pride, its willingness to adopt parts of the Restatement "to simplify, clarify, and improve the law in light of modern conditions." Gilbert v. Korvette's Inc., supra, at 611-12, nn. 25, 27. The facts before this court represent a classic case for the application of res ipsa loquitur as defined in section 328D. A plaintiff claims to have been injured while under the care of defendants. He alleges an injury to a part of his body unrelated to the area for which he sought treatment. He cannot aver the precise conduct of defendants because he was unconscious during treatment.

Defendants provide no realistic solution in suggesting that plaintiff pursue discovery under Pa. R. C. P. 4001 et seq. He would be forced to rely completely on the admissions of the alleged tortfeasors. Defendants must realize that not all persons are willing to testify honestly when a plaintiff has no means of checking their credibility. While the lack of a means of proving negligence may necessarily deprive some plaintiffs of a recovery for a legitimate claim, courts should prevent such an injustice when circumstantial evidence points strongly toward the negligence of a small, identifiable and closely linked group. Courts in other jurisdictions have applied res ipsa loquitur in factual situations almost identical to this one. In an opinion which has been excerpted in many law school textbooks, and remains as persuasive today as when it was written, the California Supreme

Court explained its landmark decision to employ res ipsa loquitur in these words:

"The present case is of a type which comes within the reason and spirit of the doctrine more fully perhaps than any other. The passenger sitting awake in a railroad car at the time of a collision, the pedestrian walking along the street and struck by a falling object or the debris of an explosion, are surely not more entitled to an explanation than the unconscious patient on the operating table. Viewed from this aspect, it is difficult to see how the doctrine can, with any justification, be so restricted in its statement as to become inapplicable to a patient who submits himself to the care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used in his treatment. Without the aid of the doctrine a patient who received permanent injuries of a serious character, obviously the result of someone's negligence, would be entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability." Ybarra v. Spangard, 25 Cal. 2d 486, 154 P. 2d 687, 689 (1944).

See also Raza v. Sullivan, 432 F. 2d 617 (D.C. Cir. 1970), cert. den. 400 U.S. 992 (1971); McCann v. Baton Rouge General Hospital, 276 So. 2d 259 (La., 1973); Horner v. Northern Pacific Ben. Ass'n Hospitals, 62 Wash: 2d 351, 382 P. 2d 518 (1963).

Even before Gilbert, we think our Supreme Court would have accepted the reasoning of Ybarra and other cases in applying res ipsa loquitur. We cannot believe that the court would permit tortfeasors to escape liability by taking the

simple precaution of first anesthetizing their victims. The decision in Gilbert to adopt section 328D merely foreclosed any doubt which may have remained.

We conclude that our Supreme Court intended that Restatement section 328D apply to medical malpractice cases as well as other negligence actions. We now find that plaintiff's complaint presents a prima facie case for the application of the section. An injury to a healthy part of a patient's body, not the subject of treatment, appears unlikely to occur in the absence of negligence. The unconsciousness of plaintiff in the custody of defendants seems to eliminate other possible causes of his injury. Obviously, defendants had duties of due care toward plaintiff while treating him.

Of course, defendants may present evidence which might subsequently convince the court that plaintiff has failed to meet one of the above elements of section 328D. As of now, they have not done so.

For similar reasons, we dismiss the hospital's preliminary objection that plaintiff failed to set forth the specific conduct by which the hospital's alleged agents failed to live up to the required standard of hospital practice.

Plaintiff has averred that the areas in which he was present during the operation were the property of Aliquippa Hospital and that the other individual defendants were paid employes of the hospital, acting within the scope of their employment. If plaintiff succeeds in establishing the negligence of individual defendants through the doctrine of res ipsa loquitur, his current allegations would also support a cause of action against the hospital on agency principles.

74

## ORDER

And now, March 7, 1977, it is ordered and directed as follows:

1. The preliminary objections of defendant, Aliquippa Hospital, to amended complaint in the nature of a motion to strike the amended complaint is hereby dismissed.

2. The preliminary objection of defendant, Aliquippa Hospital, to amended complaint in the nature of a motion for more specific complaint is hereby dismissed.

3. The preliminary objection of defendant, Honey Weyandt, to amended complaint in the nature of a motion for a more specific complaint is hereby dismissed.