IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MAURA LEANNE GRANDISON, | ) | No. 39471-9-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PROVIDENCE HEALTH & | ) | UNPUBLISHED OPINION |
| SERVICES—WASHINGTON, d/b/a | ) | |
| PROVIDENCE SACRED HEART | ) | |
| MEDICAL CENTER & CHILDREN'S | ) | |
| HOSPITAL and INLAND | ) | |
| NEUROSURGERY & SPINE | ) | |
| ASSOCIATES, and NATHANIEL | ) | |
| WHITNEY, M.D., and JANE DOE | ) | |
| WHITNEY, husband and wife and the | ) | |
| marital community thereof, and | ) | |
| SURGICAL SPECIALIST OF | ) | |
| SPOKANE, and MICHAEL MOORE, | ) | |
| M.D., and JANE DOE MOORE, husband | ) | |
| and wife and the marital community | ) | |
| thereof, and SPOKANE UROLOGY, and | ) | |
| LEVI DETERS, M.D., and JANE DOE | ) | |
| DETERS, husband and wife and the | ) | |
| marital community thereof, and | ) | |
| KAISERPERMANENTE— | ) | |
| WASHINGTON, and ROBERT | ) | |
| MARGRAF, M.D., and JANE DOE | ) | |
| MARGRAF and the marital community | ) | |
| thereof, | ) | |
| Respondents. | ) | |

HILL, J. — Maura Grandison experienced complications following back surgery.

She filed a complaint against several medical providers (the Providers) alleging negligence and medical malpractice. The Providers filed a CR 56 summary judgment motion seeking dismissal of Grandison's complaint because she failed to support her claims with expert testimony. The trial court granted the Providers motion and dismissed Grandison's complaint.

Grandison's appeal can be summarized into two main issues. First, she argues the trial court erred by not allowing her husband to argue on her behalf during the summary judgment hearing. Second, she argues that the trial court erred in dismissing her complaint for lack of expert testimony. We affirm the trial court in all respects.

FACTS

Maura Grandison underwent two spinal surgeries in California. In February 2017, while living in Spokane, Grandison met with Dr. Nathaniel Whitney to discuss imaging taken of her spine, her spinal conditions, and treatment options. One such option was a surgical intervention consisting of a revision surgery in the lumbar spine. Dr. Whitney shared with Grandison the risks associated with that surgery during the office visit. Grandison elected to proceed with the surgery, which took place in May 2017. Grandison's recovery from surgery went smoothly until August, when she fell out of her shower and developed worsening pain. By December 2017, imaging taken of Grandison's spine led to a pseudoarthrosis diagnosis for a failed lumbar fusion.

2

Grandison's pseudoarthrosis was caused either by the trauma from the shower fall or a natural complication of the May spinal surgery.

In light of the pseudoarthrosis diagnosis, Dr. Whitney offered to perform a combined anterior and posterior revision surgery. Dr. Whitney discussed the proposed surgery with Grandison in May 2018. In June 2018, Grandison was presented with, and signed, a consent form for the surgery. Dr. Michael Moore, the general surgeon involved in performing the anterior component of the surgery, met with Grandison and discussed with her the risks that accompanied the surgery. One such risk was ureter injury, which risk increased in cases involving a revision. Dr. Moore and Dr. Whitney performed the anterior operation. The posterior operation was postponed a few days due to blood loss that occurred during the anterior operation. Grandison was placed in the Intensive Care Unit for monitoring. During that time, she was evaluated and cared for by hospital staff. According to Dr. Whitney, Grandison's recovery from the anterior operation was "uneventful." Clerks Papers (CP) at 541.

Due to post-operation fluid accumulation in Grandison's body, a computed tomography urogram was performed. A left ureter abnormality was noted. "Leakage from the left ureter was identified, treatment attempts were undertaken by Urology, and ultimately the left ureter was clipped to avoid leakage and to temporize the left ureter for later reconstruction." CP at 541.

Throughout the remainder of 2018, Grandison was seen at Inland Neurosurgery for intermittent follow-ups. She reported being pleased with the results of her spinal surgery but expressed anxiousness about a ureter repair.

In June 2022, Grandison, pro se, filed a complaint for damages against the Providers. Grandison alleged the Providers were negligent and committed medical malpractice in their treatment of her.

PROCEDURE

The Providers filed a CR 56 motion for summary judgment seeking dismissal of Grandison's complaint. They argued that Grandison's causes of action were all subsumed into RCW 7.70 and dismissal was proper as she lacked expert testimony to support a prima facie case for her claims.

Grandison filed a response to the Providers motion for summary judgment, to which she attached seven exhibits. None of the exhibits contained any expert testimony establishing the standard of care for showing medical malpractice or negligence.

Grandison also filed a motion seeking to permit her husband to assist her during the summary judgment hearing. The court denied the motion as Grandison's husband was not a party to the action, something the judge had discussed with her previously.

At the conclusion of the hearing, the trial court granted the Providers motion for summary judgment. Grandison moved for reconsideration by e-mail. The trial court denied the motion without oral argument. Grandison timely appeals.

## LAW AND ANALYSIS

*Pro Se Representation*

We first address whether the trial court erred when it denied Grandison's motion to allow her husband to argue on her behalf during the summary judgment hearing. Grandison asserts this error amounted to a violation of her Bill of Rights and Fourteenth Amendment guarantees under the United States Constitution.

A party has a right to represent themselves in court. *See Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n*, 91 Wn.2d 48, 56, 586 P.2d 870 (1978). If a party chooses this course, they are held to the same standard as attorneys, both as to procedure and substantive law. *Edwards v. Le Duc*, 157 Wn. App. 455, 460, 238 P.3d 1187 (2010); *In re Marriage of Wherley*, 34 Wn. App. 344, 349, 661 P.2d 155 (1983). Aside from an individual representing themselves, only a licensed attorney may practice law. *See* RCW 2.48.170. Representing someone in court generally constitutes the practice of law. *Dutch Vill. Mall v. Pelletti*, 162 Wn. App. 531, 535, 256 P.3d 1251 (2011).

Grandison does not dispute that her husband was not licensed to practice law. Instead, she argues RCW 4.08.040 permits her spouse to join her complaint as a party and thereby appear in the case. However, Grandison's husband never joined the complaint. Her reliance on that statutory provision is, therefore, misplaced. We find the trial court did not commit error by prohibiting Grandison's husband from arguing on her behalf.

*Expert Testimony*

We now turn to whether the trial court erred when it granted the Providers summary judgment motion and dismissed Grandison's complaint in its entirety. This court reviews a trial court's summary judgment order de novo. *Watkins v. ESA Mgmt.*, LLC, 30 Wn. App. 2d 916, 923, 547 P.3d 271 (2024); *Ramey v. Knorr*, 130 Wn. App. 672, 685, 124 P.3d 314 (2005). We view the facts and reasonable inferences in a light most favorable to the nonmoving party. *Watkins v. ESA Mgmt.*, LLC, 30 Wn. App. 2d at 923; *Ramey v. Knorr*, 130 Wn. App. at 685; *Boyle v. Leech*, 7 Wn. App. 2d 535, 538, 436 P.3d 393 (2019). Summary judgment is appropriate where there are no genuine issues of material fact "and a party is entitled to judgment as a matter of law. . . . 'A material fact is one that affects the outcome of the litigation.'" *Boyle v. Leech*, 7 Wn. App. 2d at 538 (quoting *Lewis v. Krussel*, 101 Wn. App. 178, 182, 2 P.3d 486 (2000)).

Grandison essentially concedes that she did not provide a declaration from an expert to support her causes of action. She argues, however, that not all medical

6

malpractice and negligence causes of action require testimony from an expert witness. She further argues the trial court inappropriately dismissed her complaint without considering each cause of action individually.

In Washington, ch. 7.70 RCW controls "all civil actions and causes of action, whether based on tort, contract, or otherwise, for damages for injury occurring as a result of health care." RCW 7.70.010. A plaintiff seeking to prevail on a medical malpractice claim must (1) establish an applicable standard of care, (2) a breach of that standard, and (3) a proximate cause linking the breach to the injury suffered by the plaintiff. RCW 7.70.040. To establish the applicable standard of care, the plaintiff must generally provide expert testimony. *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86, 419 P.3d 819 (2018). The expert must say "what a reasonable doctor would or would not have done, that the Doctors failed to act in that manner, and that this failure caused [the plaintiff's] injuries." *Keck v. Collins*, 184 Wn.2d 358, 371, 357 P.3d 1080 (2015). Regarding causation, expert testimony must meet the standard of reasonable medical certainty or reasonable medical probability. *Desranleau v. Hyland's, Inc.*, 26 Wn. App. 2d 418, 438, 527 P.3d 1160, *review denied sub nom. Desranleau v. Hylands, Inc.*, 1 Wn.3d 1030, 534 P.3d 798 (2023) (quoting *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 606-07, 260 P.3d 857 (2011) and *Reese v. Stroh*, 128 Wn.2d 300, 309, 907 P.2d 282 (1995)). To establish causation, the plaintiff must show that the alleged breach of the standard of

care was a proximate cause of the injury at issue. RCW 7.70.040(2). "Like the standard of care, expert testimony is always required to show causation except in those few situations where understanding causation 'does not require technical medical expertise.'" *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 232, 393 P.3d 776 (2017) (quoting *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 228, 770 P.2d 182 (1989)).

In the present case, Grandison did not provide expert testimony as to the standard of care or causation. Grandison asserts that the principle of res ipsa loquitor relieved her of the duty to provide an expert, and that the trial court ignored or did not fully consider all the evidence pointing to the Providers negligence or malpractice.

Res ipsa loquitor allows the plaintiff to establish a prima facie case of negligence when they cannot prove a specific act of negligence because they are not in a situation where they would have knowledge of the specific act. *Pacheco v. Ames*, 149 Wn.2d 431, 441, 69 P.3d 324 (2003). Res ipsa is applicable when:

> (1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.

*Zukowsky v. Brown*, 79 Wn.2d 586, 593, 488 P.2d 269 (1971) (quoting *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 359, 382 P.2d 518 (1963)).

A plaintiff presenting a res ipsa loquitor theory has the burden of persuading the court by a preponderance of evidence that negligence occurred. *Robison v. Cascade Hardwoods, Inc.*, 117 Wn. App. 552, 563, 72 P.3d 244 (2003). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant, who "must then offer an explanation, if he can." *Pacheco v. Ames*, 149 Wn.2d at 441.

The first element of res ipsa is met upon the satisfaction of one of the following three conditions:

> (1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, I.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.

*Zukowsky v. Brown*, 79 Wn.2d at 595 (quoting *Horner v. N. Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d at 360)).

We find res ipsa loquitor inapplicable in this case. Grandison's left ureter was compromised during surgery, a risk she was informed of prior to the surgery. Severing a ureter, particularly when the patient consents to the surgery with knowledge of the risk, does not amount to an act that is so manifestly negligent that negligence may be inferred as a matter of law. Expert testimony is necessary in a case such as this to explain how the

9

Providers acted negligently, rather than assume negligence based on a surgical complication or less than favorable outcome.

Perhaps in the alternative, Grandison states she "could not procure experts due to her *Pro se* status," and therefore she "was denied her constitutional right to due process." Br. of Appellant at 58 (citing CP at 361-62). However, the record does not support this assertion. The record before us only shows a document indicating that the Expert Institute would not provide Grandison with an expert witness. Just because Grandison was unable to obtain an expert from the Expert Institute does not mean she could not obtain one elsewhere.

No. 39471-9-III
*Grandison v. Inland Neurosurgery, et al.*

CONCLUSION

We find the lack of expert testimony fatal to Grandison's complaint. We accordingly affirm the trial court in all respects.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Hill, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.